# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Amy Hamilton-Warwick,                         Civ. No. 16-3461 (JRT/BRT)

                    Plaintiff,

v.

                                              **REPORT AND**
Verizon Wireless; and Federal Trade           **RECOMMENDATION**
Commission, acting as the Bureau of
Consumer Protection,

                    Defendants.

Amy Hamilton-Warwick, *pro se* Plaintiff.

Seth J.S. Leventhal, Esq., Leventhal PLLC, counsel for Defendant Verizon Wireless.

Pamela Marentette, Esq., United States Attorney's Office, counsel for Defendant FTC.

BECKY R. THORSON, United States Magistrate Judge.

On October 13, 2016, *pro se* Plaintiff Amy Hamilton-Warwick filed suit against

Defendants Verizon Wireless and the Federal Trade Commission. Plaintiff's Complaint

seems to raise six potential causes of action: (1) fraud; (2) breach of contract;

(3) violation of 15 U.S.C. § 1692e; (4) violation of 15 U.S.C. § 4801; (5) violation of

30 U.S.C. § 941; and (6) violation of 50 U.S.C. § 211. (Doc. No. 1, Compl. ¶ 7.) This

matter is before the Court on the Federal Trade Commission's Motion to Dismiss for

Failure to State a Claim upon which Relief may be Granted (Doc. No. 11) and Verizon

Wireless's Motion to Compel Arbitration and Stay the Action (Doc. No. 20). The matter

has been referred to the undersigned for a Report and Recommendation under 28 U.S.C.

§ 636 and District of Minnesota Local Rule 72.1(a). (Doc. Nos. 19, 33.) This Court held a hearing on these motions on January 24, 2017. (Doc. No. 35.) For the reasons set forth below, this Court recommends granting both motions.

## BACKGROUND

Plaintiff entered into a contract for cellular phone service with Verizon Wireless on September 26, 2015. Before Verizon Wireless activated Plaintiff's cellular telephone, Plaintiff signed a sales receipt agreeing to the terms and conditions set forth in the Verizon Wireless Customer Agreement ("the Customer Agreement"). (Doc. No. 22, Decl. of Stacey Kapela ("Kapela Decl.") ¶ 3, Ex. A.) The sales receipt stated the following:

> I AGREE TO THE CURRENT VERIZON WIRELESS CUSTOMER AGREEMENT (WITH EXTENDED LIMITED WARRANTY/SERVICE CONTRACT, IF APPLICABLE), INCLUDING THE TERMS AND CONDITIONS OF MY PLAN AND ANY OPTIONAL SERVICES I HAVE AGREED TO PURCHASE AS REFLECTED ON THE SERVICE SUMMARY, ALL OF WHICH I HAVE HAD THE OPPORTUNITY TO REVIEW. I UNDERSTAND THAT I AM AGREEING TO AN EARLY TERMINATION FEE PER LINE, LIMITATIONS OF LIABILITY FOR SERVICE AND EQUIPMENT, SETTLEMENT OF DISPUTES BY ARBITRATION AND OTHER MEANS INSTEAD OF JURY TRIALS, AND OTHER IMPORTANT TERMS IN THE CUSTOMER AGREEMENT. I AM AWARE THAT I CAN VIEW THE CUSTOMER AGREEMENT ANYTIME AT VERIZONWIRELESS.COM OR IN MY VERIZON ACCOUNT.

(*Id.*) The Customer Agreement contained an arbitration provision, which was sectioned off in a black box, and stated the following in all capital letters:

**HOW DO I RESOLVE DISPUTES WITH VERIZON WIRELESS?**

**WE HOPE TO MAKE YOU A HAPPY CUSTOMER, BUT IF THERE'S AN ISSUE THAT NEEDS TO BE RESOLVED, THIS SECTION OUTLINES WHAT'S EXPECTED OF BOTH OF US.**

**YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY. WHILE THE PROCEDURES MAY BE DIFFERENT, AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO BOTH AGREE THAT:**

(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US . . . WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB") . . .

(Kapela Decl. ¶ 4, Ex. B.)

Plaintiff alleges that in June 2016 Verizon Wireless stopped offering the data plan that she had selected for her account and told her that her new 4GB plan (rather than the 3 GB plan) would be comparable in price. (Compl. ¶ 7.) On July 31, 2016, Plaintiff contacted Verizon Wireless to address "billing discrepancies" on a billing statement that was due for payment by August 21, 2016. (*Id.*) That phone call resulted in Verizon Wireless reducing the amount due to $58.87. (*Id.*) Plaintiff alleges that she paid the reduced amount prior to the due date by a check that was cashed by Verizon Wireless on

August 18, 2016. (*Id.*) Plaintiff alleges that Verizon Wireless nonetheless "assessed a

$5.00 late payment fee and reported the late payment to the credit bureau." (*Id.*)

Thereafter, Plaintiff attempted to close her account. She alleges the following as to

the difficulties that she had doing so:

> Explain to me how two letters and three phone calls closing an account on
> August 31, 2016 did not effectively close an account. Filing a complaint
> with the FCC did suspend the account as of September 26, 2016. On
> September 30, 2016 I spoke [with] Nicole M. within the Executive Office
> of Verizon Wireless regarding my FCC complaint. I explained I had
> formally closed my account with Verizon Wireless on August 31, 2016.
> Nicole had informed me any outstanding charges on the account would [be]
> removed leaving a zero balance. Before ending the telephone call she
> assured me I would receive an email detailing our conversation. I have yet
> to receive the email with a transcription of the conversation.
>
> On October 8, 2016 I wrote a check for $90.94 as required on the bill
> considering Verizon Wireless ignored my letters (dated September 1, 2016
> and September 23, 2016) requesting an amount for the dates of August 26,
> 2016 – August 31, 2016. I transferred to an alternative cellular company on
> August 31, 2016. On October 10, 2016 I received a notice via email which
> states I have a bill due on October 21, 2016 for an additional $90.94.

(Compl. ¶ 7.) Plaintiff demands $50,000 in damages "attributed to time spent" on the

litigation, and also alleges that "[i]f there has been a report of a late payment which

resulted in any damage relating to my credit score that will amount to $45,000.00 in

itself." (Compl., Request for Relief.)

## DISCUSSION

## I. The Federal Trade Commission's Motion to Dismiss

The Federal Trade Commission ("FTC") moves to dismiss Plaintiff's Complaint

with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

The FTC argues that, other than being named as a Defendant in the caption of the

Complaint, Plaintiff makes no further mention of the FTC in the Complaint, nor is there any relief requested relating to the FTC. Further, the FTC argues that even if Plaintiff tried to craft a claim against the FTC related to this dispute, it would fail for several reasons: (1) the FTC Act gives the FTC discretion in whether to start an administrative proceeding or bring suit for violations, and therefore the FTC had no duty to act under the circumstances, *see* 15 U.S.C. §§ 45(b), 53(b); (2) under the FTC Act, the FTC lacks authority to bring a case against a common carrier such as Verizon for acts undertaken in its provision of common carrier telephone service, *see* 15 U.S.C. §§ 44, 45(a)(2); and (3) the FTC, as a federal agency, is immune from suit absent an express waiver of sovereign immunity. *See Gary v. F.T.C.*, 526 Fed. Appx. 146, 149 (3d Cir. 2013) (affirming that sovereign immunity barred plaintiff's suit alleging that the FTC failed to protect him from monetary loss he suffered by a credit repair company); *see also Hartje v. F.T.C.*, 106 F.3d 1406, 1408 (8th Cir. 1997) (concluding that a *Bivens* claim against the FTC was barred by sovereign immunity).

Plaintiff does not directly address any of the FTC's arguments in her response. Rather, in response to the FTC's motion, other than restating standard review language for analyzing Rule 12(b)(6) motions, Plaintiff only alludes that there might be something in the documents attached to the Complaint that would be relevant to claims against the FTC. Liberally construing Plaintiff's Complaint, the Court has reviewed those documents, and the only reference to the FTC in those documents is within a letter to Plaintiff from Verizon Wireless dated October 5, 2015, confirming that Plaintiff qualified

for wireless services with no security deposit required. Near the end of the letter, Verizon

Wireless states:

> The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor (Verizon Wireless) is the Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20580.

(Compl., Attach. 1 at 20 of 115.) This reference does not relate to any of the alleged

claims in Plaintiff's Complaint. Further, in response to the FTC's motion to dismiss,

Plaintiff concedes that "[t]he Federal Trade Commission acting as Bureau of Consumer

Protection, was originally meant to be present as an informational party only at the time

of filing," and "the Bureau was originally present to account for Discovery purposes."

(Doc. No. 26, Pl.'s Responsive Memo. 5.) These are not proper reasons to name a party

as a Defendant in a lawsuit. Moreover, merely listing a defendant in the caption without

alleging any conduct on behalf of the defendant in the complaint does not sufficiently

state a claim against that defendant. *See Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir.

2003) (affirming dismissal of defendants where *pro se* complaint "merely listed these

individuals as defendants in his complaint and did not allege they were personally

involved"); *see also Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (affirming

dismissal where *pro se* complaint was silent as to defendant except for his name

appearing in the caption)). Because Plaintiff has not alleged actions or inactions of the FTC in her Complaint, this Court recommends granting the FTC's motion to dismiss.[1]

## II. Verizon Wireless's Motion to Compel Arbitration and Stay the Action

Verizon Wireless moves to compel arbitration pursuant to the Federal Arbitration Act and stay this action until completion of the arbitration. The Federal Arbitration Act ("FAA" or "the Act"), 9 U.S.C. §§ 1–16, governs arbitration agreements relating to transactions involving interstate commerce. The Act provides:

> A written provision . . . or a contract evidencing a transaction involving commerce[2] to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. If one party refuses to submit a dispute to arbitration, another party may "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The Act establishes a "federal policy favoring arbitration," requiring that courts "rigorously enforce

---

[1] Because this Court recommends dismissal on this basis, it need not address the additional arguments made by the FTC as to why a claim related to Plaintiff's factual allegations here would fail.

[2] Plaintiff does not dispute that the arbitration provision at issue was in writing or that the contract for wireless telephone services involves commerce for purposes of the FAA. *See Ozormoor v. T-Mobile USA, Inc.*, No. 08-11717, 2008 WL 2518549, at *2 (E.D. Mich. June 19, 2008) (finding the wireless phone services involved interstate commerce for purposes of the FAA). Furthermore, the agreement itself stated that the FAA governed the arbitration provision. (Kapela Decl. ¶ 4, Ex. B ("THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT.").)

agreements to arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quotations omitted). "Generally, 'there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Telectronics Pacing Sys., Inc. v. Guidant Corp.*, 143 F.3d 428, 433 (8th Cir. 1998) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)) (further internal quotations omitted); *see also Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203 (2012) (stating that the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution") (quotations omitted).

When considering a motion to compel arbitration, the Court is required to determine whether: (1) a valid agreement to arbitrate exists between the parties; and (2) the specific dispute is within the scope of that agreement. *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004). In making that determination, courts generally apply state law principles that govern contract formation, to ascertain the parties' intent. *First Option of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, although there is no evidence showing the area code of Plaintiff's wireless phone number, the evidence does reflect that Plaintiff signed the sales receipt at a Bloomington, Minnesota Verizon Wireless store; therefore, the state laws that presumably apply are from Minnesota. (*See* Kapela Decl. ¶ 4, Ex. B ("Except where we've agreed otherwise elsewhere in this agreement, this agreement and any disputes covered by it are governed by federal law and the laws of the

state encompassing the area code of your wireless phone number when you accepted this agreement. . .").

"Presented with a clear statement of the parties' intent, courts will honor the plain language of the document and either retain jurisdiction of the case or compel arbitration." *Onvoy, Inc. v. SHAL, LLC*, 669 N.W.2d 344, 352 (Minn. 2003) (citing *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002) (noting that the "[FAA] does not require parties to arbitrate when they have not agreed to do so"); *Peggy Rose Revocable Tr. v. Eppich*, 640 N.W.2d 601, 606 (Minn. 2002) (clarifying that "parties may agree to arbitrate any type of dispute")). To determine the scope of an arbitration clause, a court also examines the language of the agreement. *Minn. Teamsters Pub. & Law Enf't Emp.s' Union, Local No. 320 v. Cty. of St. Louis*, 611 N.W.2d 355, 359 (Minn. Ct. App. 2000). "[A]ny doubts regarding the scope of arbitrable issues must be resolved in favor of arbitration." *Churchill Envtl. and Indus. Equity Partners, L.P. v. Ernst & Young, L.L.P.*, 643 N.W.2d 333, 336 (Minn. Ct. App. 2002) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). The party opposing arbitration bears the burden of proving the parties' dispute lies outside the agreement's scope. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000). When interpreting arbitration clauses or agreements, courts should "enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Sciences v. Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989).

This Court concludes both that a valid agreement to arbitrate exists and the specific dispute between Plaintiff and Verizon Wireless is within the scope of that

agreement. *See Ikechi v. Verizon Wireless*, No. CIV. 10-4554 (JNE/SER), 2012 WL 3079254, at *4 (D. Minn. July 6, 2012) (finding a similar arbitration clause in a Verizon Wireless service contract to be valid and enforceable, that the FAA applies, and that the parties' dispute regarding a refusal to replace telephones was within its scope), *report and recommendation adopted sub nom. Albert v. Verizon Wireless*, No. CIV. 10-4554 (JNE/SER), 2012 WL 3079072 (D. Minn. July 30, 2012).

First, a valid agreement exists because Plaintiff signed the sales receipt, which states that she agreed to the current Verizon Wireless Customer Agreement and that she understood that she was agreeing to settlement of disputes by arbitration and other means instead of jury trials. (*See* Kapela Decl. ¶ 3, Ex. A.) The Verizon Wireless Customer Agreement included an arbitration provision and plainly stated that she would be accepting the agreement if she agreed in writing or activated her service. (*See* Kapela Decl. ¶ 4, Ex. B ("You accept this agreement by: [] Agreeing in writing, by email, over the phone, or in person; [] Opening a package that says you are accepting by opening it; or [] Activating your Service.") Plaintiff does not dispute these terms. Because Plaintiff both agreed in writing and activated her service, a valid agreement to arbitrate exists by way of specific provisions in the contract.

Further, the specific dispute between Plaintiff and Verizon Wireless is within the scope of their arbitration agreement. Plaintiff and Verizon Wireless expressly agreed to arbitrate "any dispute that in any way relates to or arises out of this agreement or from any equipment, products and services you receive from [Verizon Wireless]." (Kapela Decl. ¶ 3, Ex. A.) Plaintiff's action centers around a billing dispute she had with Verizon

Wireless after her data plan was changed. Because this dispute relates to the products and services Plaintiff received from Verizon Wireless, the dispute falls within the scope of the arbitration agreement based on the language of the agreement.

Plaintiff raises two arguments in response to Verizon Wireless's motion. First, she argues that Verizon Wireless consented to a trial by court because the Verizon Wireless Customer Agreement allows for such. (Doc. No. 26, Pl.'s Responsive Mem. at 4–5.) Plaintiff, however, misconstrues this provision in the contract. The provision states:

> IF FOR ANY REASON A CLAIM PROCEEDS IN COURT RATHER THAN THROUGH ARBITRATION, YOU AND VERIZON WIRELESS AGREE THAT THERE WILL NOT BE A JURY TRIAL. YOU AND VERIZON WIRELESS UNCONDITIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT IN ANY WAY. IN THE EVENT OF LITIGATION, THIS PARAGRAPH MAY BE FILED TO SHOW A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(Kapela Decl. ¶ 4, Ex. B.) This provision applies only if the arbitration clause does not apply. Plaintiff has pointed to nothing to show that she did not agree to the arbitration provision in the contract, nor has she argued that the dispute at issue falls outside of the scope of the arbitration clause. Her second argument appears to be that the contract is void because of Verizon Wireless's breach when it changed her data plan. This breach-of-contract argument, however, is one left for the arbitrator to decide. *Cf. HemoCleanse, Inc. v. Phila. Indem. Ins. Co.*, 831 N.E.2d 259, 263 (Ind. Ct. App. 2005) (observing that "an arbitration provision is valid and binding even if the party seeking to compel arbitration may have breached the contract").

# RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.      The Federal Trade Commission's Motion to Dismiss for Failure to State a Claim upon which Relief may be Granted (Doc. No. 11) be **GRANTED**, and that all claims in the Complaint be dismissed without prejudice against the FTC; and

2.      Verizon Wireless's Motion to Compel Arbitration and Stay the Action (Doc. No. 20) be **GRANTED**, and this action be **STAYED** pending arbitration.

Date:  April 12, 2017

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report by **April 26, 2017**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.